UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.B. ROBERTS,

        Plaintiff,

                                      Case No. 05-74224

v.                                Judge Avern Cohn

TRANS UNION LLC,

        Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF JOE RAPADAS

### I. INTRODUCTION

This is a case under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et. seq. Plaintiff A. B. Roberts (Roberts) claims that Trans Union LLC (Trans Union), a credit reporting agency (CRA), is liable for the negligent or willfully noncompliant reinvestigation of the status of his payment obligation to Countrywide Home Loans, Inc. (Countrywide).[1] Roberts asserts that for approximately one year after he disputed the status of his obligation, Trans Union continued to inaccurately report that the debt was unpaid, open, and past due. Roberts asserts that Trans Union's inaccurate information as to the Countrywide obligation has led several lenders to deny his application to refinance his home at a lower interest rate. Roberts seeks actual damages (including

_____

[1] Countrywide was originally named as a defendant; it was dismissed with prejudice on January 8, 2007.

1

damages for emotional distress and humiliation), punitive damages, costs, and attorney's fees.

Before the Court is Trans Union's motion for summary judgment. Trans Union asserts that summary judgment must be granted in its favor because it accurately reported Roberts' status on the Countrywide obligation at all relevant times; and even if it did not, Roberts has produced no admissible evidence that he was harmed by the inaccurate reporting.

Trans Union also moves to strike the affidavit of Joe Rapadas, a financial consultant, as inadmissible expert testimony and based upon hearsay.

For the following reasons, Trans Union's motion for summary judgment will be granted in part and denied in part; Trans Union's motion to strike the affidavit of Joe Rapadas will be denied.

## II. BACKGROUND

In 2001, Roberts bought a house from James Craig, and assumed Craig's land contract with the Veteran's Administration. Countrywide serviced the land contract, which it identified with the account number ****9689 (#9689). The home address was 1271 Featherstone Pontiac, Michigan 48342.

In August, 2003, Countrywide reported to Trans Union that Roberts was 120 days past due on account #9689, and in the 24 months prior to August, 2003, account #9689 was paid more than 90 days late 15 times, more than 60 days late once, and more than 30 days late twice. The balance on the account was $28,500.00. It is undisputed that this information was correct when Countrywide furnished it to Trans Union in August, 2003.

2

Around December, 2003, the VA filed a land contract forfeiture action against Roberts and several other parties who recorded (what turned out to be) unlawful interests in the property before he acquired it.  Roberts says that while the forfeiture action was proceeding, the VA agreed to allow Roberts to pay off the balance on the land contract and obtain title to the house.  It appears that Roberts obtained a mortgage to pay off the obligation on the land contract to the VA.  Roberts received a warranty deed, and since he did not owe further payments on the house, Countrywide stopped servicing the account.

Roberts says that throughout 2004 and 2005 he sought to refinance the mortgage on his home to reduce the 13% interest rate in effect at that time.  Roberts says that he applied to several mortgage companies, all of which denied him credit. Roberts also says that various mortgage consultants, including Joe Rapadas (Rapadas) of Indigo Financial Group, told him that he was unable to obtain refinancing because Countrywide was reporting that account #9689 was open and past due.  Roberts says that Rapadas' opinion was based on a credit report issued from Trans Union in March, 2005, which stated that account #9689 was open and past due.

Roberts says he in May 2005 he ordered a copy of his credit report from Trans Union and discovered that account #9689 had not been updated since August, 2003.[2] It is undisputed that the credit report accurately reflected that Roberts had 11 other derogatory accounts, and 6 accounts in good standing.

_____

[2] The balance column for account #9689 was blank in this credit report.   Another credit report issued on August 24, 2005 shows a balance of $28,500.00.

On May 25, 2005, Roberts sent Trans Union a letter (the dispute letter) through his attorney stating:

> My client disputes the entry for Countrywide mortgage (#  9689) for the reason that Countrywide was never the creditor on the obligation. The account listed was a land contract with the Department of Veteran's Affairs.  At one point, Countrywide was servicing the account for the VA. The VA land contract has now been paid in full.  I enclose a copy of the original land contract, the Special Warranty Deed from the VA to my client and a copy of an email exchange between the VA department and Countrywide during the period the contract was being paid off.

Trans Union received Roberts' dispute letter and the supplemental papers referenced in the letter on May 31, 2005.  Trans Union says that the e-mail Roberts provided contradicted his assertion in the dispute letter.  Specifically, Trans Union says that the e-mail from Veterans Affairs to Countrywide indicated that Countrywide had in fact been the creditor on the mortgage.  Trans Union also says that the land contract and special warranty deed did not specifically reference account #9689, or explain how it was allegedly misreported; they also reference an address other than for the property in dispute.[3]

On June 3, 2005 Trans Union sent Roberts' attorney a letter stating that it was unable to accept Roberts' documentation, but that it would contact Countrywide to advise them of his dispute and ask them to verify the accuracy of the reported information.  On June 7, 2005 Trans Union sent Roberts' attorney a letter stating that it was currently investigating the disputed information.

---

[3] The land contract and warranty deed refers to "853 Kenilworth Street, Pontiac, MI 48058." The disputed mortgage is for the house addressed "1271 Featherstone Pontiac, Michigan 48342."

Trans Union submitted an Automated Consumer Dispute Verification (ACDV) form to Countrywide on June 7, 2005.  The ACDV process is a computerized system in which a CRA sends to the furnisher (generally, the creditor) of the disputed information the information it is currently reporting about the consumer.  The ACDV specifies what information the consumer is disputing and asks the furnisher to investigate the information for correctness and completeness.  Trans Union explains that the process generally leads to one of three outcomes:

> (1)  The creditor reports back to Trans Union that the information is correct.  Trans Union then considers the creditor's verification along with any information that the consumer supplies and either revises the consumer's credit report or leaves the report unchanged, as is appropriate under the circumstances.

> (2)  The creditor reports back to Trans Union that the information is erroneous.  In that case, Trans Union either deletes or modifies the information on the credit report, as appropriate.

> (3) The creditor does not respond to Trans Union within the required time. In that case, where appropriate, Trans Union deletes the disputed items from the consumer's credit report as unverifiable.

Here, due to operator error, Trans Union entered an incorrect account number on the ACDV.  Trans Union entered account number, ***4945 (#4945), which identified a different account that Roberts had with Countrywide.  Trans Union did enter the correct address for the property.  It also entered in the section headed "CONSUMER STATES COMMENTS": "Claims company will delete.  Verify all account information."  Trans Union did not send Countrywide copies of the dispute letter or the land contract, special warranty deed, or e-mail.  Countrywide responded by updating the information on account #4945.

On June 27, 2005 Trans Union sent Roberts a letter regarding the results of the investigation. The letter indicated that Countrywide had "new information below" on account #4945. An updated credit report was included with the letter. It reflected that account #4945 was paid and closed in July, 2001. Account #9689 was not updated.

In the letter, Trans Union also advised Roberts of his right to add a consumer statement to his file if the reinvestigation did not resolve his dispute and to have revised reports sent to those who had received reports prior to changes or the addition of a consumer statement. Roberts did not question or comment on the results of the reinvestigation.

Roberts says that he was denied credit by at least three lenders[4] after he sent Trans Union the dispute letter on May 25, 2005, including:

- NCO Group, who ordered a Trans Union credit report on July 6, 2005;

- Michigan Home Finance (via Credit Technologies), who ordered a Trans Union credit report on July 12, 2005; and

- Emigrant Mortgage Company (via LSI Credit Services), who ordered a Trans Union credit report August 10, 2005.

Roberts says that Trans Union's inaccurate reporting of the status of the Countrywide obligation caused him embarrassment, humiliation, stress, and mental anguish.

On or prior to June 27, 2006 Countrywide account #9689 was removed from Roberts' credit report.[5] Trans Union points out that Roberts was denied credit even after the account was removed; and that Roberts was treated for cancer from

_____

[4] See Plaintiff's Revised Counter-Statement of Disputed Facts, ¶ 10.

[5] It is not clear when or why the account was removed.

6

December 2004 to December 2005.

### III.  SUMMARY JUDGMENT

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting

7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

## IV.  ANALYSIS

### A.  Framework for the Investigation of Disputed Information on a Credit Report.

A Credit Reporting Agency is required to "reinvestigate" any information that a consumer disputes.  15 U.S.C. § 1681i.  In particular, section 1681i(a)(1)(A) states:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller of such dispute, the agency shall, free of charge conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.  (Underlining added).

Section 1681i(a)(2) further requires that the CRA:

> ... shall provide notification of the dispute to any person who provided any item of information in dispute, at the address, and in the manner established with that person.  The notice shall include all relevant information regarding the dispute that the agency received from the consumer or reseller.  (Emphasis added).

Although section 1681i does not impose strict liability for inaccurate reporting, CRA's must follow "reasonable procedures to assure maximum possible accuracy of the information reported."  15 U.S.C. § 1681(b).

### B.  Whether Trans Union was Willfully Noncompliant in Reinvestigating the Disputed Countrywide Obligation

#### 1.  The Standard for Willful Noncompliance

To show willful noncompliance with the FCRA, the plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive.  Bakker v. McKinnon, 152 F.3d 1007 at *1013 (8th Cir. 1998) (internal quotation and citation omitted). Only a defendant who has engaged in "willful misrepresentations or concealment" has committed a willful violation.  Stevenson v. TRW, Inc, 987 F.2d 288 (5th Cir. 1993) (internal citations omitted).

## 2.  Arguments

Roberts says that Trans Union was willfully noncompliant because he called several times by telephone and asked it to correct the allegedly inaccurate information, which it did not do.[6]  Next, Roberts says that Trans Union failed to provide Countrywide with all relevant information as required by section 1681i(a)(2) when it entered the wrong account number on the ACDV, and when it summarily disregarded the supplemental information provided with his dispute letter.

Trans Union responds that it inadvertently placed the wrong account number on the AVDC.  Trans Union also says that it reasonably disregarded the land contract and special warranty deed Roberts included with the dispute letter because they referenced a different address.  Likewise, Trans Union says it reasonably believed that the e-mail contradicted Roberts' statement in his letter that Countrywide had never been the mortgagee on the obligation.

## 3.  Resolution

---

[6]  Roberts did not provide the dates or any record of these phone calls.

9

Trans Union's motion for summary judgment as to Roberts claim of willful noncompliance must be granted.  Roberts has not established that there is a genuine issue of fact as to whether Trans Union was willfully noncompliant in investigating his dispute. Roberts provides no evidence to contradict Trans Union's assertion that it inadvertently entered the wrong mortgage account number on the ACDV form. Moreover, there is no evidence that Trans Union concealed or misrepresented that it had investigated the incorrect account.  Trans Union's response letter to Roberts states that account #4945 had been updated.  The updated copy of the credit report that Trans Union provided to Roberts plainly shows changes to account #4945, and plainly shows that the status of account #9689 had not been updated since August 2003.  Considering these circumstances, there is no evidence of willful noncompliance.

### C.  Whether Trans Union was Negligent in Reinvestigating the Disputed Countrywide Obligation

#### 1.  The Standard for Negligent Reinvestigation

The adequacy of a CRA's procedures are judged according to what a reasonably prudent person would do under the circumstances.  Bryant v. TRW, Inc., 487 F. Supp 1234 (E.D. Mich. 1980).  The district court in Murphy v. Midland Credit Management, Inc., 2006 WL 2917355 at * 6 (E.D. Mo. 2006), aptly explained that:

> [t]he determination of the 'reasonableness' of the defendant's procedures ... is treated as a factual question even when the underlying facts are undisputed.  It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of procedures is beyond question ... (citing Crabill v. Trans Union LLC , 259 F.3d 662, 664 (7th Cir. 2001).

#### 2. Arguments

10

### a.  Robert's Arguments

Roberts argues that Trans Union's reinvestigation was negligent because Trans Union provided the incorrect account number to Countrywide on the ACDV.  As a result, Countrywide was unable to correct and update its information. Roberts also says that Trans Union was negligent because it provided Countrywide with only "scant" information regarding his dispute.  Roberts points out that while his dispute letter referenced the correct account number, and also stated that the Veteran's Affairs was the creditor, Trans Union merely wrote in the "CONSUMER STATES COMMENTS" section of the ACDV that Roberts "Claims company will delete.  Verify all account information."  Trans Union did not send Countrywide the dispute letter, the  contract, the special warranty, or the e-mail which also referenced the correct account number.

Third,  Roberts says that Trans Union's reinvestigation was negligent because it failed to follow its own internal procedure which requires it to consider information that the consumer supplied.  Roberts says that Trans Union categorically rejected his supplemental materials, and that any reasonable person in receipt of a dispute indicating that an account had been paid off, and seeing that the last reported entry was almost two years old, would have taken further steps to verify and update the accuracy of the information reported.  A response from the creditor that the information was accurate, under these circumstances, should have triggered further investigation.[7]  At

---

[7]  This argument mistakes the facts.  Countrywide updated the information for account #4945 to show that it had been paid and closed in 2001, which shows that Countrywide did not report to Trans Union that the account was accurate.

11

the very least, Roberts says that Veterans Affairs should have been contracted as to whether the account had been paid off.

### b.  Trans Union's Arguments

Trans Union says that summary judgment should be granted in its favor because accuracy is an absolute defense to liability, and that the information it reported regarding account #9689 was accurate as of August, 2003, although admittedly outdated.  Trans Union relies on section 1681c(a)(5) which allows a CRA to report adverse information for up to seven years.  Trans Union also points out that the Court of Appeals for the Sixth Circuit has held that information in a credit report is accurate under the FCRA if it is "technically accurate" or "accurate on its face" even if it might be "misleading or incomplete in some sense."  Garrett v. Trans Union, LLC, 2006 WL 2850499 at *10 (S.D. Ohio 2006), citing Spence v. TRW, Inc., 92 F.3d 382 (6th Cir. 1996); see also Cahlin v. General Motors Acceptance Corp.,  936 F.2d 1151, 1156-57 (11th Cir. 1991).

Trans Union compares the facts here with Todd v. Assoc. Credit Bureau Serv. Inc., 451 F. Supp. 447 (E.D. Pa. 1977).  In Todd, a department store assigned the plaintiff's account to a collection agency when plaintiff failed to make timely payments and had an outstanding balance of $1,2000.00  Id. at 448.   Although the plaintiff eventually paid off the balance to the collection agency, his credit report showed the $1,200.00 balance, and showed that the store had charged off the balance as "bad debt" and referred it to a collection agency.  Id.  The plaintiff claimed that the defendant was negligently noncompliant with the FCRA because the report included misleading,

12

stale, and erroneous information because the fact that the debt was later paid in full was never reflected in the credit report.  Id.   On the defendant's motion for summary judgment, the district court held that the CRA had not breached its duty because the information that was actually reported was "unquestionably accurate."  Id. at 449.

Trans Union also disagrees with Roberts' assertion that if Countrywide had been provided with the correct account number, it would have stated on the credit report that the account was paid in full.  Trans Union says that this is false because the house was foreclosed on, and Roberts did not pay the debt.[8]

### 3.  Resolution

Trans Union' motion for summary judgment as to Roberts claim of negligent reinvestigation must be denied.  Roberts has established that there is a genuine issue of fact as to whether Trans Union negligently reinvestigated the status of account #9689.  What this dispute boils down to is whether Trans Union reasonably investigated Roberts' claim that the information regarding account #9689 was outdated, and therefore inaccurate because it was outdated.  Trans Union's argument that technical accuracy is a complete defense to a claim of negligent reinvestigation where the consumer specifically notifies the CRA that the information is outdated, would completely undermine section 1681i's plainly stated directive:

> the agency shall ... conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information. (Underlining added).

---

[8] Trans Union does not say what the credit report would have shown instead.

13

Section 1681i creates a vehicle through which consumers can assure that creditors are supplied with the most <u>current</u> information.  As explained in <u>Cahlin</u>, 936 F. 2d at 1160, a claim under 1681i(a)(1)(A) is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering <u>additional facts that provide a more accurate representation about a particular entry</u>.  Moreover, section 1681i contemplates that the consumer will dispute allegedly inaccurate information to the reporting agency so that the agency can record the current status of the information. <u>Spence v. TRW, Inc</u>., 92 F. 3d 380, 383 (6th Cir. 1996).

Further, the cases that Trans Union relies on are distinguishable from the situation here.   For instance, while the plaintiffs in <u>Todd</u> and <u>Spence</u> complained that information in their credit reports was outdated, neither plaintiff ever requested that the defendant CRAs update the alleged inaccurate information.  <u>Cahlin</u> is also distinguishable because in that case the CRA updated the status of a disputed account and characterized it as "bad debt with a zero balance."  936 F.2d at 1157.  While the plaintiff complained that the characterization of the debt was inaccurate, the Eleventh Circuit found that this was in fact accurate because the disputed account had been charged off by a creditor for accounting purposes and was only later settled by the plaintiff for an amount less than the full balance due.  <u>Id</u>. at 1158.  Here, Roberts specifically notified Trans Union that account # 9698 was outdated because the account was paid in full.  That the account was paid in full is not dispute.  Thirty days after Trans Union received notice, it continued to report that as of August, 2003 the account was open, unpaid, and on some reports listed a balance of $ 28,500.00.

14

Whether Trans Union's handling of Roberts' dispute, including supplying Countrywide with the wrong account number, and failing to provide his e-mail and supplemental papers to Countrywide was negligent, is an issue for the trier of fact.

### D.  Proximate Cause and Damages [9]

#### 1.  The Standard

A plaintiff may establish actual damages by producing sufficient evidence from which a reasonable trier of fact that the inaccurate entry was a "substantial factor" that brought about the denial of credit.  Philbin v. Trans Union, 101 F.3d 957 (3rd. Cir. 1996); Garrett v. Trans Union, L.L.C., 2006 WL 2850499 at *10 (S.D. Ohio). A plaintiff may also establish actual damages by explaining in sufficient detail the emotional distress and humiliation resulting from his knowledge that a CRA distributed a credit report containing inaccurate information to a third-party.  Bryant, 487 F. Supp. at 1240; Garrett, WL 2850499 at * 11-12.

As to the scope of liability, a CRA is not liable under the FCRA for reporting inaccurate information obtained from a [presumptively reliable source], absent prior notice from the consumer that the information may be inaccurate.  Anderson v. Trans Union, LLC, 345 F. Supp. 2d 963, 971 (W.D. Wis. 2004)(citing, Henson v. CSC Credit Services, 29 F.3d 280, 285 (7th Cir. 1994)).  Moreover, potential liability is not triggered until 30 days after the CRA receives the consumer's dispute.  15 U.S.C. § 1681i(a)(1)(A).  Accordingly, the relevant time frame in which to evaluate Roberts' claim

---

[9]  Roberts claims actual and punitive damages.  Punitive damages are only available for willful noncompliance.  Because Roberts has not made out a claim for willful noncompliance, punitive damages are not available in this case. 15 U.S.C. § 1681n.

is from June 29, 2005 (30 days after Trans Union received Roberts' dispute) to June 27, 2006 (the date on which the Countrywide account information was removed.)

### 2. Trans Union's Motion to Strike Joe Rapadas' Affidavit

#### a. Description of the Affidavit

With regards to whether Roberts has established a genuine question issue of fact as to actual damages, the Court must first determine whether Rapadas' affidavit is admissible.  To support his claim that he was denied credit on the basis of the open and late status of account #9689. Robert proffers the affidavit of financial consultant Joe Rapadas (Rapadas).  Rapadas states in his affidavit that from March, 2005 and for several months thereafter, he attempted to find a lender willing to refinance Roberts' home at a lower rate.  Rapadas says that in March, 2005 and in August, 2005 he ran credit reports which showed that account #9689 was open and past due.  Rapadas said that he was unsuccessful in finding Roberts a new lender, and that a credit bureau told him that Roberts had a low credit score and that his application to refinance his existing mortgage at a lower rate was being denied because account #9689 was shown as being an open and past due account on his credit report.

#### b. Arguments

Trans Union moves to strike the affidavit of Joe Rapadas as inadmissible because it is based on the hearsay of unidentified parties, and lacks foundation.  Trans Union also objects to Rapadas' conclusion that Roberts' credit denials were based on the open and late status of account #9689.  Trans Union says that this conclusion is opinion testimony and Rapadas has not been identified as an expert.  In particular, Trans Union points out that Rapadas fails to specify which lenders he submitted

16

Roberts' application to, which credit bureau he spoke to, and whether any lender relied on a credit report from Trans Union.  In his supplemental affidavit, Rapadas explains that he does not name specific lenders, credit bureaus, or which CRA he ordered reports from because he lost Roberts' file.

Roberts argues that Rapadas' affidavit is admissible.  Roberts says that the affidavit does not contain expert testimony or hearsay because Rapadas has personal knowledge of the following matters: he worked with Roberts for several months in his attempts to refinance his home; he ran credit reports for Roberts in March 2005 and again in August 2005; he understood both reports to show that the Countrywide account was open and past due; and he was unable to obtain a lender for Roberts.

### c.  Resolution

Rapadas' affidavit is admissible.  FED. R. CIV. PROC. 56(e) provides that:

> supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Rapadas testimony is neither expert testimony or based on hearsay.  Rapadas has personal knowledge of facts surrounding Roberts' allegations because he worked directly with Roberts in attempting to refinance his mortgage.  Rapadas also has personal knowledge about the lending industry, and reviews credit reports as part of his job as a mortgage broker.  Consequently he has knowledge of the effect and meaning of a credit report to a lender.

Although Rapadas states that he has lost Roberts' file, he may testify to his personal knowledge and memory regarding which lenders he worked with on Roberts'

behalf, and which CRA he ordered reports from.  The Court also notes that the Trans Union credit report issued on August 24, 2005 shows that Financial Indigo Group requested Roberts' credit report on March 1, 2005 and on May 4, 2005, which coincides with the time frame in which Rapadas states that he ordered credit reports.

### 3. Trans Union's Other Arguments Regarding the Evidence on Damages

Trans Union also argues that Roberts cannot show causation or actual damages because Roberts has failed to establish that it supplied a report to a third party.  While Trans Union acknowledges that in his revised counter-statement of disputed facts Roberts has pointed to three creditors who requested credit reports, it says that these are "unknown credit reports containing unknown information."

Trans Union further says that Roberts' claim that he was denied credit on the basis of the open and late payment status of account # 9698 is false.  Trans Union offers a letter dated August 24, 2005 from Rapadas to Roberts stating:

> I received a counter offer on to your mortgage application.  The Bank that I submitted your application to reduced the appraised value of your home. The appraisal that was done on your home was appraising the house at $115,000 (One Hundred Fifteen Thousand Dollars).  After reviewing the appraisal, the Bank did not agree with the Value of the appraisal and reduced the value of your home to $100,000 (One Hundred Thousand Dollars).  Therefore, the maximum that they will allow you to borrow is $50,000 (Fifty Thousand Dollars) ... The $50,000 is not enough to payoff your current loan.  I will have to withdraw your application with this Bank and try to reapply with another Bank.

Trans Union says that this letter shows that Roberts was approved for a loan after he disputed the status of account #9698 on May 25, 2005.  Moreover, the letter indicates that Roberts inability to refinance his house was due solely to the low appraisal value.

18

Finally, Trans Union says that Roberts cannot show that the open, late payment status of account #9689 was a substantial factor in his alleged credit denial because Roberts report had 11 other adverse accounts.

### 4. Resolution

Roberts' claim of negligent reinvestigation must proceed.  Roberts has raised a genuine issue of fact as to causation and damages.  First, Roberts has identified three third-party creditors who request and received Trans Union reports.[10]  While Trans Union denies that it distributed the reports, its credit report dated August 24, 2005 plainly states: "The following companies have received your credit report...":  NCO Group, Michigan Home Finance, and Emigrant Mortgage Company.

Roberts' has also established through Rapadas' affidavit that he was denied credit and that this was likely based on the inaccurate information on account #9689. Roberts' also testified in his deposition as to the humiliation and emotional distress he endured because of the inaccurate information on the account.

Next, the fact that Robert's credit reports listed other adverse accounts does not warrant summary judgment in Trans Union's favor.  Roberts need not rule out all other explanations for a  denial of credit.  Philpin, 101 F.3d at 969.  Instead, Roberts' burden is to "produce evidence from which a reasonable trier of fact could infer that the

---

[10] Roberts did not originally identify any lenders who allegedly received Trans Union's credit report.  Roberts instead argued that all three nationwide CRAs have a duty to share updates and corrected information found as a result of their reinvestigations.  Therefore, Trans Union was liable for damages even if a lender denied Roberts credit based on the inaccurate information reported by another CRA. This argument is meritless, as Roberts bears the burden of showing that a Trans Union credit report was a causal factor in the denial of any of applications for refinancing on his home for a lower interest rate.  See Cahlin, 936 F. 2d at 1161.

inaccurate entry was a 'substantial factor' that brought about the denial of credit." Id. at

968.   Robert's points out that Rapadas states in his affidavit that the other adverse

entries "were not significant enough to prevent me from obtaining improved financing for

Mr. Roberts."   See ¶ 10.

Likewise, although Rapadas did write to Roberts regarding an offer on his

mortgage application and a low appraisal, he also wrote in the same letter:

> you really need to increase your credit score in order for other Banks to
> qualify your application.  You have talked to the credit bureau regarding
> different ways you can increase your score and they basically said that the
> Countrywide mortgage showing up on your credit report is really bringing
> your score down.

Considering the conflicting evidence on the record, it is for a the finder of fact[11] to

determine to what extent Roberts' other adverse accounts had on his ability to refinance

his mortgage; to what extent the inaccurate reporting of Countrywide account #9689

played in the denial of his application for refinancing his mortgage; and to what extent

Robert suffered humiliation and emotional distress.

---

[11]  Roberts has not requested a jury trial.

20

**V. CONCLUSION**

For the reasons stated above, Trans Union's motion for summary judgment is

GRANTED as to Robert's claim of willful noncompliance and DENIED as to his claim of

negligent noncompliance.  Further, Trans Union's motion to strike the affidavit of Joe

Rapadas is DENIED .

SO ORDERED.


Dated:  May 3, 2007

 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of
record on this date, May 3, 2007, by electronic and/or ordinary mail.

 s/Julie Owens
Case Manager, (313) 234-5160
